IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

| | |
|---|---|
| GERRON MCMILLER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 1:19-00842 |
| | ) |
| WARDEN C. MARUKA, | ) |
| | ) |
| Respondent. | ) |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is Petitioner's Petition for Writ of *Habeas Corpus* by a Person in Federal Custody under 28 U.S.C. § 2241 (Document No. 1), filed on November 25, 2019.[1] By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 3.)

**PROCEDURE AND FACTS**

On October 9, 2015, Petitioner was arrested in Cuyahoga County, Ohio, by State authorities for a State offense. (Document No. 8-1, pp. 6 – 9.) On November 4, 2015, Petitioner was indicted in the United States District Court for the Northern District of Ohio of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). See United States v. McMiller, Case No. 5:15-cr-00407 (N.D.Oh. Oct. 4, 2016), Document No. 1. On November 12, 2015, Petitioner was sentenced in the Court of Common Pleas in Cuyahoga County,

---

[1] Because Petitioner is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Ohio, to a 36-month term of imprisonment with 35 days of presentence credit (Case No. CR15-594522). (Document No. 8-1, pp. 6 – 9.) On November 19, 2015, Petitioner was committed to the Ohio Department of Corrections for the continued service of his State sentence. (Id., pp. 9 – 14.) On December 29, 2015, Petitioner was borrowed pursuant to a Federal Writ of *Habeas Corpus Ad Prosequendum* from the State of Ohio. (Id., pp. 16 and 17.); also see McMiller, Case No. 5:15-cr-00407, Document No. 7. On October 4, 2016, Petitioner was sentenced in the Northern District of Ohio in Criminal Action No. 5:15-00407 to a 120-month term of incarceration to "run consecutively to any undischarged state court sentence." (Document No. 8-1, pp. 19 – 25.); McMiller, Case No. 5:15-cr-00407, Document No. 48. The District Court further stated as follows: "To assist the Bureau of Prisons in calculating credit that *may* be due for time served, the Court offers that the defendant has been in federal custody in this case since December 19, 2015." (Id.)(emphasis added). On October 6, 2016, Petitioner was returned to State authorities. (Document No. 8-1, pp. 16 – 17.) On September 14, 2018, Petitioner completed his State sentence and was released by State authorities to the exclusive custody of Federal authorities. (Id., pp. 27 – 28.) The BOP is computing Petitioner's sentence as commencing on September 14, 2018 (the date Petitioner was released to Federal custody). (Id., pp. 30 – 31.) The BOP has also granted Petitioner four days of prior custody credit for (May 17, 2015 through May 19, 2015, and August 16, 2015), which was time Petitioner spent in State custody after the date of the Federal offense on State charges that were subsequently dismissed by the State. (Id., pp. 3, 30 – 31.)

On November 25, 2019, Petitioner filed his Petition for Writ of *Habeas Corpus* by a Person in Federal Custody under 28 U.S.C. § 2241. (Document No. 1.) Petitioner alleges that the BOP is improperly calculating the term of his imprisonment. (Id.) Specifically, Petitioner appears to contend that the BOP is improperly denying him Federal credit for the time he served in federal

2

custody. (Id.) Petitioner acknowledges that his Criminal Judgment clearly states "120 months, to run consecutively to any undischarged state court sentence." (Id.) Petitioner, however, alleges that the Court further stated "to assist the Bureau of Prisons in calculating credit that may be due for time served, the court offers that the defendant has been in federal custody in this case since December 19, 2015." (Id.) Petitioner complains that the BOP is computing his Federal sentence as starting on September 14, 2018. (Id.) Petitioner, however, argues that he was in the custody of the United States Marshal Service from December 19, 2015 until October 6, 2016. (Id.) Therefore, Petitioner argues that he should be "credited for time served in federal custody in this case from December 19, 2015through October 6, 2016, as stated in the court's judgment." (Id.)

As Exhibits, Petitioner attaches the following: (1) A copy of his "Sentence Monitoring Computation Data As of 02-15-2019" (Document No. 1-1, pp. 1 – 2.); and (2) A copy of Petitioner's "Judgment in a Criminal Case" as filed in the United States District Court for the Northern District of Ohio in Criminal Action No. 5:15-00407 (Id., pp. 3 – 9.).

By Order entered on December 10, 2019, the Court ordered that Respondent file an Answer to the allegations contained in the Petitioner's Petition and show cause, if any, why the Writ of *Habeas Corpus* sought by the Petitioner in this case should not be granted. (Document No. 5.) On December 23, 2019, Respondent filed his Response to the Order to Show Cause. (Document No. 8.) Respondent argues that Petitioner's Petition should be denied based on the following: (1) "Petitioner failed to exhaust his administrative remedies" (Id., p. 3.); (2) "Petitioner's federal sentence commenced on September 14, 2018" (Id., pp. 4 – 5.); and (3) "Petitioner is not entitled to any additional prior custody credit" (Id., pp. 5 – 7.).

In support, Respondent attaches the following Exhibits: (1) The Declaration of Forest Kelly, Correctional Program Specialist (Document No. 8-1, pp. 2 – 4.); (2) A copy of the Court of

Common Pleas Cuyahoga County, Ohio's "Journal Entry" (Id., pp. 6 – 7.); (3) A copy of a document from the Cuyahoga County Sheriff's Office dated December 17, 2019, stating that Petitioner was incarcerated in the Cuyahoga County Jail from "10/9/2015 was released on 11/19/2015 . . . sent to INST/LRAIN C.I." (Id., p. 9.); (4) A copy of results concerning Petitioner on the "Department Offender Tracking System" for the Ohio Department of Rehabilitation and Corrections Bureau of Sentence Computation (Id., pp. 11 – 14.); (5) A copy of USMS Form 129 (Id., pp. 16 – 17.); (6) A copy of Petitioner's Judgment as filed in the United States District Court for the Northern District of Ohio in Case No. 5:15-00407 on October 4, 2016 (Id., pp. 19 – 25.); (7) A copy of Petitioner's "Release Notice" and "Expiration of Sentence" from the Ohio Department of Rehabilitation and Corrections (Id., pp. 27 – 28.); (8) A copy of Petitioner's "Public Information Inmate Data as of 12-19-2019" (Id., pp. 30 – 31.); (9) A copy of Petitioner's "Administrative Remedy Generalized Retrieval" (Id., p. 33.); and (10) A copy of a Memorandum from the BOP's Designation and Sentence Computation Center regarding Petitioner's prior custody credit (Id., p. 35.).

By Order and Notice entered on January 2, 2020, the undersigned advised Petitioner of his right to file a Reply to Respondent's Response. (Document 9.) On February 13, 2020, Petitioner filed a Motion for Extension of Time to file his Reply. (Document No. 10.) By Order entered on February 14, 2020, the undersigned granted Petitioner's above Motion for Extension of Time. (Document No. 11.) On February 19, 2020, Petitioner filed his Reply. (Document No. 12.) Citing transcripts from his sentencing hearing, Petitioner again argues he is entitled to credit from December 19, 2015 until October 6, 2016. (Id.) The transcripts reveal that the December 19, 2015 dated was obtained from Petitioner's Presentence Report as the dated Petitioner "made his initial appearance and was remanded to the custody of the U.S. Marshal." (Id.) The transcripts, however,

reveal that (1) defense counsel acknowledged that a writ was issued because Petitioner was in State custody, and (2) the District Court stated it was "the responsibility of the B.O.P. and within the purview of the authority of the B.O.P. to make that decision." (Id.)

## ANALYSIS

1. **Failure to Exhaust:**

Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, Courts consistently require prisoners to exhaust their administrative remedies prior to seeking *habeas* review under Section 2241. See McClung v. Shearin, 90 Fed.Appx. 444, 445 (4th Cir. 2004)(unpublished)(citing Carmona v. Bureau of Prisons, 243 F.3d 629, 634 (2nd Cir. 2001)); Pelissero v. Thompson, 170 F.3d 442, 445 (4th Cir. 1999); Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994). Exhaustion allows prison officials to develop a factual record and an opportunity to correct their own errors before being haled into Court. See Jones v. Bock, 549 U.S. 199, 204, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); McCarthy v. Madigan, 503 U.S. 140, 144-45, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). The purpose of exhaustion, however, is frustrated "[w]hen an inmate attempts to exhaust an issue before the issue is ripe for review [because] the BOP is deprived of its opportunity to properly address the issue before being haled into court." Specter v. Director, 2010 WL 883733, * 4 (D.S.C. Mar. 5, 2010)(slip copy)(finding that petitioner failed to properly exhaust his claim for RRC placement because "no recommendation or decision had been made in his case yet and would not occur until 17 to 19 months prior to his anticipated release date").

The BOP has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required

first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

Respondent argues that Petitioner's Section 2241 Petition should be denied because Petitioner did not exhaust his administrative remedies. (Document No. 8, p. 3.) In support,

Respondent submits the Declaration of Declaration of Forest Kelly, Correctional Program Specialist for the BOP. (Document No. 8-1, pp. 2 - 4.) Mr. Kelly declares that in his position he has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings. (Id.) Specifically, Mr. Kelly states that "[a] review of SENTRY shows Petitioner has never filed an administrative remedy while in BOP custody." (Id., p. 3.) As an Exhibit, Mr. Kelly attaches a copy of Petitioner's "Administrative Remedy Generalized Retrieval" dated December 19, 2019. (Id., p. 33.) Petitioner failed to address the above issue in his Response. (Document No. 12.)

Based upon a review of the record, the undersigned finds that Petitioner failed to fully exhaust his available administrative remedies. Petitioner does not dispute the validity of the information contained in Mr. Kelly's Declaration. The undisputed record reveals that Petitioner never filed an administrative remedy with respect to his claim in this matter. Since Petitioner failed to properly exhaust administrative remedies, the undersigned concludes, and hereby respectfully recommends, that this matter should be dismissed. Notwithstanding Petitioner's failure to exhaust, the undersigned will briefly consider the merits of his claims.

**2.      Petitioner's Federal sentence did not commence until September 14, 2018.**

Title 18 U.S.C. § 3585(a) provides that a Federal sentence does not begin to run until the defendant is received into custody for service of the sentence. Generally, the first arresting sovereign acquires primary jurisdiction "for purposes of trial, sentencing, and incarceration. However, the sovereign with priority of jurisdiction . . . may elect under the doctrine of comity to relinquish it to another sovereign." United States v. Warren, 610 F.2d 680, 684-85 (9th Cir. 1980). Primary jurisdiction can be relinquished by operation of law, such as bail release, expiration of sentence, or dismissal of charges. United States v. Cole, 416 F.3d 894, 897 (8th Cir. 2005). Primary

jurisdiction is **not** relinquished when an inmate is borrowed pursuant to a writ of *habeas corpus ad prosequendum*. United States v. Evans, 159 F.3d 908, 912 (4th Cir. 1998)(citing Thomas v. Whalen, 962 F.2d 358, 361, n. 3 (4th Cir. 1992)("A federal sentence does not begin to run . . . when a prisoner in state custody is produced for prosecution in federal court pursuant to a federal writ of habeas corpus ad prosequendum. Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation.").

Ohio state authorities arrested Petitioner on October 9, 2015, thereby obtaining primary jurisdiction. Petitioner was then temporarily transferred into Federal custody on December 29, 2015, pursuant to a Writ of *Habeas Corpus ad Prosequendum* for proceedings upon his Federal charges.[2] See Grier v. Purdue, 2014 WL 3823999, * 3 (N.D.W.Va. Aug. 4, 2014)(citing United

---

[2] Although the District Court for the Northern District of Ohio stated "[t]o assist the Bureau of Prisons in calculating credit that may be due for time served, the Court offers that the defendant has been in federal custody in this case since December 19, 2015," such appears incorrect. The record reveals that the Northern District of Ohio issued a Writ of *Habeas Corpus ad Prosequendum* for Petitioner on December 18, 2015, and Petitioner was borrowed from State authorities by the USMS on December 29, 2015. *McMiller*, Case No. 5:15-cr-00407, Document No. 7; (*also see* Document No. 8-1, pp. 16 – 17.) The Sentencing Transcripts further reveal that the Court made the above recommendation at the request of Petitioner's defense counsel. *McMiller*, Case No. 5:15-cr-00407, Document No. 54, p. 44. The followingly colloquy occurred:

| | |
|---|---|
| MR. WHITNEY: | Your Honor, would the court order credit for time served? |
| THE COURT: | The court would recommend, of course, that Mr. McMiller be given credit for time served. Do we have a date in which he was taken into custody in this case? |
| MR. WHITNEY: | December 29, 2015. |
| THE COURT: | Do you have any records, or is there any record on the docket that would - - |
| MR. FILIATRUT: | I don't have any records on hand, Judge. There may have been a writ that had to be filed in this case since he was serving a state prison term. |
| THE COURT: | Right. I will tell you what, Counsel, I am always hesitant to put a date when there's no verification. So if you could promptly find out that information and contact chambers. I would like to have this judgment entry filed today, so if we can have some clarification as to the date so that the court can at least list that in the judgment entry. Of course, Mr. McMiller would be entitled to that, but, of course, it's also the responsibility of the BOP and within the purview of the authority of the BOP to make that decision. |
| MR. FILIATRAUT: | I could say this, Judge. Actually, the first page of the presentence investigation report states that December 19, 2015, the defendant made |

States v. Cole, 416 F.3d 894, 897 (8th Cir. 2005)(A sovereign may relinquish primary jurisdiction by "releasing a defendant on parole, granting bail, or dismissing pending charges.") The United States District Court for the Northern District of Ohio imposed Petitioner's Federal sentence on October 6, 2016. Thus, Petitioner's Federal sentence could not commence prior to the date of its imposition on October 6, 2016. See United States v. LaBeilla-Soto, 163 F.3d 93, 98 (2nd Cir. 1998)(finding that "the district court had no authority to grant defendant sentencing credit for time he spent in federal custody before sentencing"); United States v. Flores, 616 F.2d 840, 841 (5th Cir. 1980)(stating that a federal sentence "cannot commence prior to the date it is pronounced, even if made concurrent with a sentence already being served"). Although Petitioner's Federal sentence was imposed on October 6, 2016, Ohio state authorities did not relinquish primary

---

| | |
|---|---|
| | his initial appearance and was remanded to the custody of the U.S. Marshal, so it's likely that that would be the - - |
| THE COURT: | Here it is. |
| MR. FILIATRAUT: | - - the date. |
| THE COURT: | All right. So I will offer that date - - |
| MR. WHITNEY: | Thank you. |
| THE COURT: | - - to the BOP. Does that sound about right to you, Mr. McMiller? |
| THE DEFENDANT: | Yes. |
| MR. WHITNEY: | Second, Your Honor, would the court consider ordering that the marshal return him to the state court so he can serve that sentence first and the federal sentence second? |
| THE COURT: | I am not opposed to doing it in that fashion. Mr. Filiatraut? |
| MR. FILIATRAUT: | I am not sure what the procedures are. |
| THE COURT: | I think we have to follow the procedures. Do the marshals have any idea? |
| DEPUTY MARSHAL: | I believe he will do the state time first. |
| THE COURT: | Does that clarify that issue? |
| MR. WHITNEY: | Yes. |
| THE COURT: | And we will have a holder? |
| DEPUTY MARSHAL: | Yes, Judge. |
| THE COURT: | Thank you. I try not to involve myself with the order of the service of the sentence, because sometimes my understanding is not what the proper procedure would be, but it this instance, it sounds as though the state court sentence will be served first followed by the federal sentence. |

Id., pp. 44 – 46. Thus, the record clearly reveals the sentencing court only *offered* the above date to assist the BOP in its computation of Petitioner's sentence and the Court acknowledged that it was within the BOP's "purview of authority" to compute Petitioner's sentence. Although Petitioner was borrowed by the USMS via a writ, Petitioner was clearly in primary State custody from December 19, 2015 until September 14, 2018.

jurisdiction until Petitioner was released from State custody via expiration of his State sentence to the custody of Federal authorities on September 14, 2018.

Upon special circumstances, the Attorney General or the BOP may enter a nunc pro tunc designation allowing a Federal sentence to begin to run while an inmate is in State custody. See 18 U.S.C. § 3621(b); United States v. Evans, 159 F.3d 908, 911-12 (4th Cir. 1998)(finding that a federal sentence may commence while an inmate is in state custody "if and when the Attorney General or the Bureau of Prisons agree to designate the state facility for service of that federal sentence"). In the instant case, however, the District Court clearly ordered that Petitioner's Federal sentence was to "run *consecutively* to any undischarged state court sentence." (Document No. 8-1, p. 20.)(emphasis added). Therefore, Petitioner was not entitled to a nunc pro tunc designation.

**2.     Petitioner is not entitled to additional prior custody credit.**

Title 18 U.S.C. § 3585(b) provides as follows:

> **(b) Credit for prior custody. --** A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences - -
>
> > **(1)** as a result of the offense for which the sentence was imposed; or
> >
> > **(2)** as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

The United States Supreme Court has held that under Section 3585(b), "Congress made clear that a defendant could not receive double credit for his detention time." Wilson, 503 U.S. at 337, 112 S.Ct. at 1355 - 1356; also see United States v. Mojabi, 161 F.Supp.2d 33, 36 (D.Mass. 2001)(holding that "[s]ection 3885(b) prohibits 'double credit,' i.e. awarding credit for presentence time served against one sentence if that time has already been credited against another sentence").

In the instant case, the Court finds that Petitioner is not entitled to receive *additional* prior

10

custody credit. Petitioner is seeking Federal credit from December 19, 2015 (the alleged[3] date Petitioner was borrowed by USMS from State custody via Writ of *Habeas Corpus ad Prosequendum*) to October 6, 2016 (date of imposition of Federal sentence). This time, however, was credited against the service of Petitioner's State sentence. The BOP may not grant prior custody credit for time that has been credited against another sentence. See United States v. Goulden, 54 F.3d 774 (4th Cir. 1995)(unpublished opinion)(holding that credit is only available for time spent in custody which has not been credited against another sentence); United States v. Brown, 977 F.2d 574 (4th Cir. 1992)(finding that "a defendant may receive credit against his federal sentence for time spent in official detention prior to the date his sentence commences unless it has been credited against another sentence"). Thus, Petitioner is not entitled to have the above requested time credited against his Federal sentence as such would constitute double credit. Based on the foregoing, the undersigned finds that Petitioner is not entitled to any additional prior custody credit.

## **PROPOSAL AND RECOMMENDATION**

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DENY** Petitioner's Petition for Writ of *Habeas Corpus* by a Person in Federal Custody under 28 U.S.C. § 2241 (Document No. 1), and **REMOVE** this matter from the Court's docket.

The Petitioner is hereby notified that this "Proposed Findings and Recommendation" is

---

[3] The record reveals the correct date is December 29, 2015, instead of December 19, 2015. The incorrect date apparently was obtained from Petitioner's Presentence Report, which indicated that Petitioner appeared for his Initial Appearance on December 19, 2015. Petitioner, however, appeared for his Initial Appearance on December 29, 2015, and Petitioner was borrowed from State authorities by the USMS on December 29, 2015. *McMiller*, Case No. 5:15-cr-00407, Document Nos. 8 and 9; (*also see* Document No. 8-1, pp. 16 – 17).

hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*, and counsel of record.

ENTER: September 16, 2022.



Omar J. Aboulhosn
United States Magistrate Judge